Casey, Oh. J.,
delivered the opinion of the court:
The claimant-is a naturalized citizen of Irish birth. His residence has been for many years at the town of Danbury, Connecticut, having a wife and children there. His occupation was that of a ditcher. For years prior to the war, he and a brother were in the habit of going to the Southern States, and of engaging in contracts of ditching lands at various points; going South in the fall, and returning home in the summer. In the fall of 1860 they went to Florida, and in the spring of 1861, when the war broke out, they were engaged upon work on a plantation near Tallahassee, in the State of Florida.
The southern ports were blockaded, communication with the North cut off, and they-were compelled to remain South. They spent most of the time in the neighborhood of Savannah, engaged in such work as they could procure. His brother died there during the war. During his stay at Savannah, or in that neighborhood, the claimant purchased five bales of sea-island cotton, and stored it there. After the capture of Savannah it was seized by the military of the United States, and shipped to the cotton agent at Now York and sold, and the net proceeds X>aid into the United States.
The evidence shows that the claimant was a man of sixty *601 years of age, somewhat feeble in health, and with but little knowledge of business or public affairs. The evidence shows that he manifested great regret and distress that he could not leave and return to his home and family in Connecticut. And he returned there so- soon as communication was opened. In declaration and sentiment he adhered to the United States, and the evidence does not disclose that he did any act inconsistent with these professions.
The main grounds of objection to his recovery by the special counsel for the United States are—
1. His voluntary residence in the rebel territory during- the war.
2. The want of distinct and clear proof of loyal conduct and sentiment during his residence there, covering the period of the war 5 and,
3. That, being a citizen of Connecticut, his trading within the rebel territory was illegal under the non-intercourse acts, and subjected the property bought to capture and forfeiture.
1. We do not think that the claimant remained voluntarily in the rebel territory, for we find that he continually lamented and regretted his inability to return to his family and friends in Connecticut. A man of more intelligence and adroitness could doubtless have found his. way through the lines, and returned home. But w7e must remember that he was an old man, somewhat feeble, and doubtless, from his occupation, a man in humble life, witliont influence or friends to assist and advise him in getting through the lines. We do not think his residence South was voluntary, and, therefore, the presumption of disloyalty does not attach to him.
2. We think that, being a citizen of Connectiout, that the proofs, together with the presumptions in his favor, are sufficient to sustain the allegation of loyalty.
3. This detention in the rebel territory being constrained and involuntary, we do not think his purchase of the cotton, under the circumstances, involved any breach or violation of the non-intercourse laws. There was no effort or intention to carry it through the lines. The money and means for its purchase was not taken from the loyal to the disloyal territory. It was the fruits of his earnings during his constrained stay within the insurrectionary territory. And it was only intended to be used or carried away after the war .should be ended. It neither *602 injured the Union cause nor helped that of the rebels. And we think, under the circumstances, the cotton was not subject to capture and forfeiture.
Another objection is, that there is no clear and distinct proof that the claimant’s cotton was ever sold by -the United States •agents and the proceeds paid into the Treasury.
It is true that there is no proof of actual receipt by the cotton agent, and the shipment of this identical lot of cotton to New York, and its sale there. But there is proof that this cotton, under the military orders issued by the commanding officer at Savannah, was duly reported in the name of the claimant; and that it was taken away from the place where he had it stored by the military authorities of the United States. It was the duty of such officers to have kept separate and special records of such cotton, designating all the proceedings in relation to each lot, but this was not done. All the cotton seized was commingled together. But having been traced into the possession of the military authorities of the United States, we are justified in presuming that they did what the acts of Congress required of them in reference to it. And that was to deliver it to a Treasury agent, who was directed to sell- it, and pay the net proceeds into the Treasury. These duties' are enjoined upon the military under heavy penalties, and the agents are required to give bonds to perform their duties faithfully, and pay over the money. Having traced it into the possession ■of the United States, in the absence of all proof to the contrary, we are to presume that their officers charged with these duties performed them properly and faithfully, and were not guilty of embezzlement and other high crimes and misdemeanors. There is nothing to rebut or overcome the presumption in this case, and therefore we must hold that the proceeds caine into the Treasury.
These views result in finding in favor of the claimant for five bales of sea-island cotton, at $231 79 per bale, amounting to the sum of $1,158 95, ahd for which sum judgment is to be entered in his favor.